# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LEE BROOKINS, | Case No. 1:17-cv-01675-AWI-SAB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| M. HERNANDEZ, et al., | |
| Defendants. | [ECF No. 42] |

Plaintiff Barry Lee Brookins is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion related motion for summary judgment, filed July 9, 2019.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants Officer M Hernandez, Lieutenant E. Williams, Captain Williams, Officer L. Sanchez, Officer Gelvezon,[1] Officer Scheesley,[2] Sergeant Crane, and S. Marsh for cruel and unusual punishment.

---

[1] Incorrectly identified by Plaintiff as Galvenson.

[2] Incorrectly identified by Plaintiff as Schleesman.

On December 19, 2018, Defendants filed an answer to the complaint. After an unsuccessful settlement conference, the Court issued the discovery and scheduling order on March 6, 2019.

As previously stated, on July 9, 2019, Defendants filed the instant exhaustion related motion for summary judgment. Plaintiff filed an opposition on July 26, 2019, and Defendants filed a reply on July 31, 2019.

## II.

## LEGAL STANDARD

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### III.

### DISCUSSION

### A. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners

are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a) (3-4).

### B. Summary of Plaintiff's Complaint

On February 19, 2017, M. Hernandez approached Plaintiff's cell and requested that he strip search. Plaintiff complied and stripped down to his boxer shorts and told Hernandez that he would not be able to bend, squat or pull his buttocks apart because he wears a full body back brace. Plaintiff also had a medical chrono which prohibited him from bending, squatting, lifting more than 10 pounds, and no behind back handcuffs. Officer Hernandez was not satisfied with the results even though he was aware that Plaintiff could not perform the tasks requested. Plaintiff was handcuffed and escorted to C-facility clinic. Once Plaintiff was in the housing tank, he informed Licensed Vocational Nurses Martinez and Sami that he was unable to perform the strip search as requested by Martinez due to his medical issues. Sami asked if Plaintiff was suspected to have contraband on him, and Plaintiff stated no.

///

On this same date, Lieutenant E. Williams requested that Plaintiff strip search again, and Plaintiff complied "all the way down to [his] boxer shorts" and stated he would "not be able to bend, squat & spread my buttocks apart, I've been through the metal detectors, hand wands & they've been negative. If you think I have something on me take me to be x-rayed they've done it everywhere else I've been under the circumstances either at CTC or F&R [due] to my medical condition." Williams stated the x-ray technician was off and release and receiving had no one working, so if Plaintiff cooperated with him by removing his boxer shorts, bent over and spread his buttocks, he would dismiss the rules violation report of delaying staff and return him to his cell. Plaintiff again stated that he could not perform the tasks because of his medical condition as detailed in the medical chrono. Lieutenant Williams had Officer Hernandez hand wand him again which was negative but Williams decided to send Plaintiff to the Administrative Security Unit (ASU) contraband watch for weapons inspection. Plaintiff remained on contraband watch for three days, while handcuffed and in leg irons with bright lights on 24 hours a day.

After the third day on contraband watch, on February 21, 2017, Captain A. Williams arrived at the ASU and Plaintiff was taken for x-rays and cleared and released back to general population. Plaintiff submits that this same decision could have been made by Captain Williams three days earlier.

While Plaintiff was on contraband watch he asked several officers to turn off the bright light in his cell because he was unable to sleep. When Plaintiff asked Officer L. Sanchez to turn off the light, he stated that maintenance had to repair it because it was broken and would not turn off. When Plaintiff asked Officer Gelvezon to turn off the light he stated that "they wanted him to leave it on." When Plaintiff asked Officer Scheesley to turn off the light he said he would check with someone and later told him no. When Plaintiff asked Sergeant Crane he stated, "that the light had to be fixed."

**C.     Statement of Undisputed Facts**

1.     Plaintiff Barry Lee Brookins (C-71478) is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR). (Pl.'s First Am. Compl., ECF No. 12.)

2.     At all times relevant to this case, Plaintiff was housed at the California Substance Abuse and Treatment Facility (SATF). (ECF No. 12 at 2.)

3. At all times relevant to this case, Defendant Hernandez was a Correctional Officer at SATF. (ECF No. 12 at 1.)

4. At all times relevant to this case, Defendant E. Williams was a Correctional Lieutenant at SATF. (ECF No. 12 at 1.)

5. At all times relevant to this case, Defendant A. Williams was a Correctional Captain at SATF. (ECF No. 12 at 2.)

6. At all times relevant to this case, Defendant Sanchez was a Correctional Officer at SATF. (ECF No. 12 at 1.)

7. At all times relevant to this case, Defendant Gelvezon was a Correctional Officer at SATF. (ECF No. 12 at 2.)

8. At all times relevant to this case, Defendant Scheesley was a Correctional Officer at SATF. (ECF No. 12 at 2.)

9. At all times relevant to this case, Defendant Crane was a Correctional Sergeant at SATF. (ECF No. 12 at 2.)

10. At all times relevant to this case, Defendant Marsh was an Associate Warden and Administrative Officer of the Day (AOD). (ECF No. 12 at 2.)

11. Plaintiff filed the original complaint on December 13, 2017. (ECF No. 1.)

12. Plaintiff filed the operative first amended complaint on May 21, 2018. (ECF No. 12.)

13. At all times relevant to this case, CDCR has provided its inmates with a comprehensive administrative process in which inmates may appeal a decision, action, condition, policy, or omission made by the Department or its staff, which the inmate believes has had a material adverse effect on their welfare. (Foston Decl. ¶ 3.)

14. The CDCR Office of Appeals (OOA) receives, reviews, and maintains all third level inmate appeals concerning non-medical issues. This is the final level of review in CDCR's administrative appeals process, and a final decision at this level is generally required to exhaust an inmate's administrative remedies for an appeal. (Foston Decl. ¶ 4.)

15. Plaintiff is aware of CDCR's administrative appeals process and availed himself of that process on multiple occasions. (ECF No. 12 at 3; Foston Decl. Ex. A.)

16. Plaintiff's administrative appeal history shows that between February 19, 2017, and May 21, 2018, Plaintiff filed and exhausted fourteen non-medical appeals regarding issues arising from his incarceration at SATF. Those appeals are: TLR 1703826 (SATF-16-05492); TLR 1708527 (SATF-17-01000); TLR 1708891 (SATF-17-00939); TLR 1708924 (SATF-17-01722); TLR 1709254 (SATF-16-4309); TLR 1709325 (SATF-17-02420); TLR 1712485 (SATF-17-03745); TLR 1713492 (SATF-17-03504); TLR 1713868 (SATF-17-03743); TLR 1714025 (SATF-17-03742); TLR 1714070 (SATF-17-3934); TLR 1714322 (SATF-17-5127); TLR 1716116 (SATF-17-01866); and TLR 1804044 (SATF-18-00884). (Foston Decl. ¶ 10; Foston Decl. Exs. A-O.)

### D. Defendants' Motion

Defendants argue that Plaintiff's administrative appeal history demonstrates that he did not exhaust an appeal regarding his claims against Sanchez, Gelvezon, Scheesley, Crane, and Marsh.

An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress," and "the prisoner need only provide the level of detail required by the prison's regulations." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010). In California, the applicable regulation states:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question

Cal. Code Regs. tit. 15, § 3084.2(a)(3). In addition, "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included" in the originally submitted CDCR-602 inmate appeal form. Cal. Code Regs. tit. 15, § 3084.1(b).

As an initial matter, it is undisputed that Plaintiff had an available administrative remedies system, and he utilized such system to complain about some (but not all) of the events upon which this action proceeds.

7

In the original and first amended complaint, Plaintiff identified TLR 1708527 (SATF-17-01000) as the appeal that exhausted his administrative remedies against Defendants Hernandez, E. Williams, A. Williams, Sanchez, Gelvezon, Scheesley, Crane, and Marsh. Plaintiff exhausted SATF-17-01000 at the third level of review. Plaintiff originally filed Appeal Log No. SATF-17-01000 on February 22, 2017, in which he explained the issue as follows

> These are the issues incorporated with this complaint; 8th amendment cruel & unusual punishment, deliberate indifference to my good health, discrimination, torture, extreme prejudice, color of state law, abuse of authority, 4th amend invasion to my right to free 1st amend religion, freedom & speech, 14th amend equal protection of the law. On Feb. 19, 2017, no PSR had been passed out which is normal routine but however the prison was being searched for a medical walker. On 2nd watch my cell was approached by c/o Hernandez. I was instructed by c/o Hernandez to strip down completely naked & squat & bend over at the waist pull your buttocks apart & cough. This officer would have not expected for a medical walker to be up my buttocks. I stripped down to my boxers only & due to my medical backbrace I wear for medical reasons I was unable to complete this excessive routine of bending, squatting, etc. I was escorted to c-facility medical placed into a holding cage up to 4 hours in restraints & under the order of Lt. Williams I was sent to ASU/potti watch placed into a straight jacket, with handcuffs on & leg shackles & left that way for approximately 3-days (72) hrs & on the 3rd day Captain Williams whom I believe is related to Lt. Williams came to interview me with no regard for the 40 hour policy & released me back to c-facility. [Prior] to any of this I requested to be x-rayed to show I had nothing on me hidden & I cleared the metal detector. Then finally after 3-days of suffering & torment I was taken to ASU Doctor on 2-21-2017 given an exam, then sent to CTC & x-rays were given & cleared, then released back to c-facility.

In the action requested portion of this appeal, Plaintiff stated, in pertinent part:

> *Some of the officer(s) I encountered during this incident c/o A. Sanchez 2nd watch inquired why didn't I wanna strip out. Surveillance officer L. Sanchez ASU. Surveillance officer Galvenson ASU. Surveillance officer Schleesnan ASU. Sgt. Crane 3rd watch ASU. Sgt. Salvado 2nd watch ASU.

(Foston Decl. Ex. C, DOJ 0047.)

The Court finds that this grievance is sufficient to raise Plaintiff's Eighth Amendment claims against Defendants Hernandez and E. Williams. Although Plaintiff's original appeal identified A. Williams, Sanchez, Gelvezon, Scheesley, and Crane by name, the appeal only identified A. Williams as the person who released him back to C-Facility, and only identified Sanchez, Gelvezon, Scheesley, and Crane as officers Plaintiff encountered during the incident who asked why he did not want to be stripe searched. (Foston Decl. Ex. C, DOJ 0045, DOJ 0047.) The original appeal also never identified

8

Marsh by name, and never presented any facts connecting Marsh to the leg restraints Plaintiff wore during the Contraband Surveillance Watch (CSW). (Id.)

Plaintiff is proceeding on his Eighth Amendment claim that Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane, and Marsh knowingly subjected him to constant bright lights for approximately three days while he was housed on CSW, and A. Williams could have remedied the situation without him remaining in the conditions for three days. These facts were not included in the original appeal at the first level of review. Rather, Plaintiff's appeal only mentioned that Hernandez and E. Williams subjected him to cruel and unusual punishment by subjecting him to an excessive stripe search despite his medical condition and placed him in CSW where he remained for three days. (Foston Decl. Ex. C, DOJ 0045, DOJ 0047.) The fact that Plaintiff named Defendants A. Williams, Sanchez, Gelvezon, Scheesley and Crane in Section B of the appeal as individuals who he encountered and asked why he did not want to strip out does not provide sufficient detail to allege any wrongdoing on their part, and does not grieve the claim that they intentionally subjected him to constant bright lights for 72 hours. In addition, Plaintiff never identified Defendant Marsh or presented any facts connecting Marsh to his complaints against Defendants Hernandez and E. Williams. Thus, Plaintiff did not provide the prison with sufficient notice to correct any alleged wrongdoing on the part of Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane and Marsh and did not "provide the level of detail required by the prison's regulations." Sapp v. Kimbrell, 623 F.3d at 824.

Furthermore, the other thirteen appeals filed by Plaintiff also did not exhaust his Eighth Amendment claims against Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane and Marsh. In TLR 1703826 (SATF-16-05492), Plaintiff challenged the cancellation of another appeal, SATF-C-16-04309. (Foston Decl. Ex. B.) In TLR 1708891 (SATF-17-00939), Plaintiff alleged officers Arreazola and Vazo had inappropriately confiscated some of his property items during a February 19, 2017 cell search. (Foston Decl. Ex. D.) In TLR 1708924 (SATF-17-01722), Plaintiff challenged an RVR he received on February 23, 2017, for refusing to accept assigned housing. (Foston Decl. Ex. E.) In TLR 17092564 (SATF-16-04309), Plaintiff contended that unclothed body searches violated his First, Fourth, and Eighth Amendment rights given that there were other ways to conduct the searches.

(Foston Decl. Ex. F.)[3] In TLR 1709325 (SATF-17-02420), Plaintiff alleged that funds had been inappropriately removed from his trust account. (Foston Decl. Ex. G.) In TLR 1712485 (SATF-17-03745), Plaintiff challenged the cancellation of another appeal, SATF-16-05438. (Foston Decl. Ex. H.) In TLR 1713492 (SATF-17-03504), Plaintiff challenged the cancellation of another appeal, SATF-C-17-03282. (Foston Decl. Ex. I.) In TLR 1713868 (SATF-17-03743), Plaintiff challenged the cancellation of another appeal, SATF-17-02015. (Foston Decl. Ex. J.) In TLR 1714025 (SATF-17-3742), Plaintiff the cancellation of another appeal, SATF-16-04044. (Foston Decl. Ex. K.) In TLR 1714070 (SATF-17-03934), Plaintiff alleged his release date had been calculated incorrectly. (Foston Decl. Ex. L.) In TLR 1714322 (SATF-17-05127), Plaintiff alleged his minimum eligible parole date was incorrect. (Foston Decl. Ex. M.) In TLR 1716116 (SATF-17-01866), Plaintiff challenged a rules violation report he received on February 19, 2017, for delaying a peace officer because he was medically incapable of bending and squatting. (Foston Decl. Ex. N.)[4] In TLR 1804044 (SATF-18-00884), Plaintiff alleged that his custody designation had not been properly restored after his release from the administrative segregation unit on January 17, 2018. (Foston Decl. Ex. O.) Therefore, none of these appeals identified or set forth any of the factual allegations alleged against Defendants in this action, and do not exhaust the claims against Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane and Marsh.

Defendants have met their initial burden of proof in demonstrating that Plaintiff failed to exhaust the administrative remedies as to his claims against Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane and Marsh. The burden now shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino v. Baca, 747 F.3d at 1166.

---

[3] This appeal was filed on November 21, 2016, well before the events at issue in this case, and therefore the appeal does and cannot identify the Defendants by name or allege any of the Defendants committed any wrongdoing. (Foston Decl. Ex. F.)

[4] This appeal does not identify any of the Defendants by name or allege that any of the Defendants committed any wrongdoing, as alleged in this action. (Foston Decl. Ex. N.)

10

In opposition, Plaintiff argues that Appeal Log No. TLR 1708527 (SATF-17-1000) exhausted his Eighth Amendment claims against all Defendants. Plaintiff also argues that prison officials should have investigated all of the staff members he named in Section B of the Appeal Log. No. SATF-17-01000, which would have exhausted his claims against those Defendants. Plaintiff further argues that he raised the issue of being exposed to bright lights in his cell at the second level of review, which would have exhausted his claims against Defendants A. Williams, Gelvezon, Sanchez, Crane and Scheesley. Plaintiff then, in the alternative, argues that he was prevented from exhausting his administrative remedies for six of the eight Defendants. Lastly, Plaintiff contends that he could not exhaust his administrative remedies because prison officials failed to comply with policies governing the inmate grievance process.

Plaintiff was advised in the first level response, "[y]ou do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint." (Foston Decl. Ex. C.) In expressing dissatisfaction with the resolution of the appeal at the first level of review, Plaintiff did not provide the names of Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane and Marsh as wrongdoers, nor did he complain that the authors of the response neglected to address any wrongdoing by these Defendants. Although Plaintiff did indicate that he told Lieutenant C. Livingston during the interview that the bright lights were kept on for 72 hours, an inmate cannot add new information at the second level of review. Indeed, this issue was not addressed at the second or third level of review, and in expressing dissatisfaction with the second level review, Plaintiff again did not name Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane and Marsh as wrongdoers, nor did he complain that the authors of the response neglected to address any wrongdoing by these Defendants. In any event, even if Plaintiff properly raised the issue of the bright lights, Plaintiff did not name or link Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane and Marsh to any wrongdoing or link them to the actions of Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane and Marsh named in the appeal and addressed in the appeal responses. Nor did the authors of the appeal responses perceive Plaintiff's appeal as challenging the bright light conditions within the administrative segregation unit potty watch or involving Defendants A. Williams, Sanchez, Gelvezon, Scheesley, Crane and Marsh as wrongdoers.

Plaintiff was specifically informed that his appeal would not exhaust claims against any unnamed staff members, and the prison did not render a decision on the merits against anyone other than Defendants Hernandez and E. Williams. Therefore, prison officials did not ignore a procedural defect by issuing a response because prison officials had no reason to suspect from the appeal that there was a procedural problem of unidentified other wrongdoers. Cf. Reyes v. Smith, 810 F.3d 654, 658 (exhaustion satisfied where "prison officials ignore[d] the procedural problem and render[ed] a decision on the merits of the grievance").

Plaintiff's claim that prison officials should have investigated all of the staff members who he named in Section B of the Appeal Log No. SATF-17-1000, is without merit. There is no support for the contention that prison officials investigate every staff member named on an appeal form. Rather, California regulations clearly require the Plaintiff to "list all staff member(s) involved," "describe their involvement in the issue" being appeals, "state all facts known and available to him/her regarding the issue being appeal" on the CDCR Form 602, and Plaintiff failed to do so. Cal. Code Indeed, a reasonable person reading Appeal Log No. SATF-17-1000 would not have understood that Plaintiff was also attempting to complain about misconduct of prison officials other than Defendants Hernandez and E. Williams.

Plaintiff further contends that he was prevented from exhausting his claims against Defendants A. Williams, Gelvezon, Sanchez, Crane, Scheesley, and Marsh due to prison employee's code of professional conduct which excepted these Defendants from staff complaint inquires. Plaintiff also contends that prison officials failed to comply with unspecified polices governing the grievance process. Plaintiff's contentions are meritless. Plaintiff successfully filed and exhausted his claims against Defendants Hernandez and E. Williams in Appeal Log No. SATF-17-1000 which directly contradicts his claim that he was prevented from exhausting his claims against the other Defendants, in the same appeal. Further, there is no evidence that prison officials improperly processed the appeal, or otherwise prevented Plaintiff from exhausting his claims. Accordingly, Plaintiff has not exhausted his Eighth Amendment claims against Defendants A. Williams, Gelvezon, Sanchez, Crane, Scheesley, and Marsh, and their motion for summary judgment should be granted.

///

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and

2. The claims against Defendants A. Williams, Gelvezon, Sanchez, Crane, Scheesley, and Marsh be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 29, 2019**

UNITED STATES MAGISTRATE JUDGE