1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   BARRY LEE BROOKINS,                    )   Case No. 1:17-cv-01675-AWI-SAB (PC)
                                            )
12              Plaintiff,                  )
                                            )   FINDINGS AND RECOMMENDATION
13        v.                                )   RECOMMENDING DEFENDANTS' MOTION
                                            )   FOR SUMMARY JUDGMENT BE
14   M. HERNANDEZ, et al.,                  )   GRANTED/DENIED
                                            )
15              Defendants.                 )   [ECF No. 70]
                                            )
16   _____        )

17        Plaintiff Barry Lee Brookins is appearing pro se and in forma pauperis in this civil rights action

18   pursuant to 42 U.S.C. § 1983.

19        Currently before the Court is Defendants' motion for summary judgment, filed on April 20,

20   2020.  (ECF No. 70.)

21                                          **I.**

22                               **RELEVANT BACKGROUND**

23        This action is proceeding against Defendants Officer M. Hernandez and E. Williams for cruel

24   and unusual punishment.

25        Defendants filed an answer to the complaint on December 19, 2018.

26        After an unsuccessful settlement conference, the Court issued the discovery and scheduling

27   order on March 6, 2019.  (ECF No. 37.)

28   ///

                                            1

1    On May 16, 2019, the Court granted Defendants request to modify the scheduling order and

2  extended the time to file an exhaustion-related motion for summary judgment to July 9, 2019.  (ECF

3  No. 41.)

4    On July 9, 2019, Defendants filed an exhaustion-related motion for summary judgment.  (ECF

5  No. 42.)

6    On August 30, 2019, the undersigned issued Findings and Recommendations recommending

7  that Defendants' exhaustion-related motion for summary judgment be granted, and Defendants A.

8  Williams, Gelvezon, Sanchez, Crane, Scheesley, and Marsh be dismissed, without prejudice, for

9  failure to exhaust the administrative remedies.  (ECF No. 46.)

10    On December 16, 2019, the Findings and Recommendations were adopted in full and

11  Defendants A. Williams, Gelvezon, Sanchez, Crane, Scheesley, and Marsh were dismissed from the

12  action, without prejudice.  (ECF No. 48.)

13    On January 16, 2020, Plaintiff filed a motion for reconsideration of the Court's December 16,

14  2019 order, which is pending review before the Honorable Anthony W. Ishii.  (ECF No. 52.)

15    As previously stated, on April 20, 2020, Defendants Hernandez and Williams filed a motion

16  for summary judgment.  (ECF No. 70.)  Plaintiff filed an opposition on June 22, 2020, and Defendants

17  filed a reply on June 30, 2020.  (ECF Nos. 85, 88.)  Plaintiff filed a supplemental opposition on July 7,

18  2020.  (ECF No. 91.)

19  ## II.

20  ### LEGAL STANDARD

21  **A.    Summary Judgment Standard**

22    Any party may move for summary judgment, and the Court shall grant summary judgment if the

23  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

24  judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v.

25  U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed

26  or undisputed, must be supported by (1) citing to particular parts of materials in the record, including

27  but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials

28

1    cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot

2    produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

3    The Court may consider other materials in the record not cited to by the parties, but it is not required to

4    do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th

5    Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

6           In judging the evidence at the summary judgment stage, the Court does not make credibility

7    determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984

8    (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most

9    favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry

10   of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942

11   (quotation marks and citation omitted).

12                                               **III.**

13                                          **DISCUSSION**

14        **A.      Summary of Plaintiff's Complaint**

15          On February 19, 2017, M. Hernandez approached Plaintiff's cell and requested that he strip

16   search.  Plaintiff complied and stripped down to his boxer shorts and told Hernandez that he would not

17   be able to bend, squat or pull his buttocks apart because he wears a full body back brace.  Plaintiff also

18   had a medical chrono which prohibited him from bending, squatting, lifting more than 10 pounds, and

19   no behind back handcuffs.  Officer Hernandez was not satisfied with the results even though he was

20   aware that Plaintiff could not perform the tasks requested.  Plaintiff was handcuffed and escorted to C-

21   facility clinic.  Once Plaintiff was in the housing tank, he informed Licensed Vocational Nurses

22   Martinez and Sami that he was unable to perform the strip search as requested by Martinez due to his

23   medical issues.  Sami asked if Plaintiff was suspected to have contraband on him, and Plaintiff stated

24   no.

25          On this same date, Lieutenant E. Williams requested that Plaintiff strip search again, and

26   Plaintiff complied "all the way down to [his] boxer shorts" and stated he would "not be able to bend,

27   squat & spread my buttocks apart, I've been through the metal detectors, hand wands & they've been

28   negative.  If you think I have something on me take me to be x-rayed they've done it everywhere else

                                                  3

I've been under the circumstances either at CTC or F&R [due] to my medical condition."  Williams

stated the x-ray technician was off and release and receiving had no one working, so if Plaintiff

cooperated with him by removing his boxer shorts, bent over and spread his buttocks, he would

dismiss the rules violation report of delaying staff and return him to his cell.  Plaintiff again stated that

he could not perform the tasks because of his medical condition as detailed in the medical chrono.

Lieutenant Williams had Officer Hernandez hand wand him again which was negative but Williams

decided to send Plaintiff to the Administrative Security Unit (ASU) contraband watch for weapons

inspection.  Plaintiff remained on contraband watch for three days, while handcuffed and in leg irons

with bright lights on 24 hours a day.

    **B.**   **Statement of Undisputed Facts**

   1.   During the events at issue in this case, Plaintiff was an inmate in the custody of the

California Department of Corrections and Rehabilitation (CDCR).  (ECF No. 1 at 1, 4, 8.)[1]

   2.   During the events at issue in this case, Plaintiff was housed at California Substance

Abuse and Treatment Facility (SATF) in Corcoran, California.  (ECF No. 1 at 1, 8.)

   3.   During the events in this issue, Defendant M. Hernandez was a correctional officer at

SATF.  (Declaration of M. Hernandez (Hernandez Decl.) ¶ 1, ECF No. 70-4.)

   4.   During the events at issue in this case, Defendant E. Williams was a correctional

lieutenant at SATF.  (Declaration of E. Williams (Williams Decl.) ¶ 1, ECF No. 70-5.)

   5.   In February 2017, Plaintiff was house at Facility C, Building 2, Cell C2-118.  (Pl.'s

Dep. 42:3-5; Hernandez Decl. ¶ 2.)

   6.   On February 19, 2017, prison officials conducted a systematic search of Plaintiff's

housing unit in order to locate missing metal and other contraband.  (Williams Decl. ¶ 3; Pl's Dep.

48:12-25, 49:1-4.)

   7.   As part of the search, prison officials instructed Plaintiff to submit to an unclothed body

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

4

1    search.  (Pl.'s Dep. 38:10-25, 39:5-21; Williams Decl. ¶ 3.)

2         8.       Plaintiff refused to remove all of his clothing for the unclothed body search on the

3    ground that he had a medical condition and a medical chrono that prohibited him from bending over or

4    squatting.  (Pl.'s Dep. 38:10-25, 43:1-10, 52:13-25; Williams Decl. ¶¶ 3-4; ECF No. 12 at 4, 6, 10.)

5         9.       Plaintiff's medical records show that he did not have a medical condition or active

6    medical chrono that prohibited him from bending over or squatting.  (Declaration of Dr. Feinberg

7    (Feinberg Decl.) ¶¶ 20-21, ECF NO. 70-6.)

8         10.      After refusing to remove his clothing, Plaintiff was escorted to the Facility C medical

9    center and placed in a holding cell.  (Pl.'s Dep. 42:17-25, 43:1-25, 44:1-9, 48:12-25, 56:24-25, 57:1-

10   11; Williams Decl. ¶¶ 3-4; ECF No. 12 at 10.)

11        11.      After Plaintiff was escorted to the Facility C medical center, Plaintiff did not have any

12   other interactions or contact with Hernandez.  (ECF No. 12 at 10; Hernandez Decl. ¶¶ 3-4.)

13        12.      Hernandez did not recommend or authorize Plaintiff's placement on contraband

14   surveillance watch.  (Hernandez Decl. ¶¶ 3-4.)

15        13.      Hernandez did not work in the Short Term Restricted Housing Unit where s are

16   conducted, and he was not one of the officers assigned to visually monitor Plaintiff during his

17   contraband surveillance watch.  (Hernandez Decl. ¶ 4; ECF No. 12 at 10.)

18        14.      Hernandez was not aware there was any risk Plaintiff would suffer any injury if he

19   were placed on contraband surveillance watch, and he was not aware of the housing conditions

20   Plaintiff experienced while he was on contraband surveillance watch.  (Hernandez Decl. ¶¶ 3-4; ECF

21   No. 12 at 10; Pl's Dep. 62:6-25; 63:1-10.)

22        15.      At the Facility C medical facility, Williams asked Plaintiff to submit to an unclothed

23   body search.  (Williams Decl. ¶ 5; Pl's Dep. 38:19-25, 48:12-25, 49:1-14, 50:6-25, 51:1-25, 52:1-25,

24   60:6-25, 61:1-19, ECF No. 12 at 10-11.)

25        16.      Plaintiff again refused to remove all of his clothing for the unclothed body search on

26   the ground that he had a medical condition and a medical chrono that prohibited him from bending

27   over or squatting.  (Williams Decl. ¶¶ 5-6; Pl's Dep. 38:19-25, 48:12-25, 49:1-25, 50:1-25, 51:1-25,

28   52:1-25, 55:24-25, 60:6-25, 61:1-19; ECF No. 12 at 10-11.)

1    17.    Williams suspected Plaintiff was hiding contraband on or within his body based on

2  Plaintiff's refusal to remove all of his clothing for the unclothed body search.  (Williams Decl. ¶¶ 6-8.)

3    18.    Plaintiff passing a metal detector test did not eliminate the possibility that he was

4  hiding metal or other nonmetallic contraband within his body.  (Williams Decl. ¶ 9.)

5    19.    Williams could not have Plaintiff X-rayed onsite on February 19, 2017, because there

6  were no technicians to operate the X-ray machine that weekend.  (Pl.'s Dep. 53:10-25, 54:1-25, 58:7-

7  11, ECF No. 12 at 11; CDCR DOM § 52050.21, Williams Decl. Ex. A.)

8    20.    Williams did not have the authority to order Plaintiff to be taken to an outside hospital

9  to be X-rayed.  (CDCR DOM § 52050.21, Williams Decl. Ex. A; Feinberg Decl. ¶ 22; Pl's Dep.

10  53:10-25, 54:1-25; ECF No. 12 at 11.)

11    21.    Williams did not have authority to place Plaintiff on contraband surveillance watch.

12  (Williams Decl. ¶ 10; CDCR DOM § 52050.23.1)

13    22.    Based on his suspicion that Plaintiff was hiding contraband on or within his body,

14  Williams contacted the Administrative Officer of the Day, reported Plaintiff would not remove all of

15  his clothing for an unclothed body search, and asked the AOD for instructions on how to address the

16  issue.  (Williams Decl. ¶ 11.)

17    23.    The AOD made the decision to place Plaintiff on contraband surveillance watch and

18  instructed Williams to have Plaintiff transferred to the Short Term Restricted Housing unit for the

19  contraband surveillance watch.  (Williams Decl. ¶ 11.)

20    24.    After Plaintiff was escorted from the Facility C medical facility to Short Term

21  Restricted Housing, Plaintiff did not have any other interactions or contact with Williams.  (Williams

22  Decl. ¶ 2; Pl's Dep. 57:21-25, 58:1-6, 61:20-25, 62:1-3.)

23    25.    Williams did not work in the Short Term Restricted Housing Unit where s are

24  conducted, and he was not one of the officers assigned to visually monitor Plaintiff during his .

25  (Williams Decl. ¶ 12; Pl's Dep. 57:21-25, 58:1-6, 61:20-25, 62:1-3.)

26  ///

27  ///

28  ///

1

**C.      Analysis of Defendants' Motion**

2      Defendants argue that the indisputable facts show Plaintiff did not have a medical condition that

3 prevented him from obeying the officers' orders to submit to an unclothed body search, and did not suffer

4 any serious harm as a result of being put on contraband surveillance watch. There is also no evidence

5 showing Hernandez and Williams were aware of and disregarded a substantial risk that Plaintiff would

6 suffer serious harm while on contraband surveillance watch.

7      **1.      Eighth Amendment Deliberate Indifference Claim**

8      The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners

9 not only from inhumane methods of punishment but also from inhumane conditions of confinement.

10 Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825,

11 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While

12 conditions of confinement may be, and often are, restrictive and harsh, they must not involve the

13 wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347)

14 (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or

15 contrary to evolving standards of decency that mark the progress of a maturing society violate the

16 Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v.

17 Pelzer, 536 U.S. 730, 7378 (2002); Rhodes, 452 U.S. at 346.

18      Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,

19 clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.

20 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in

21 prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To

22 maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately

23 indifferent to a substantial risk of harm to his health or safety.  Farmer, 511 U.S. at 847; Thomas v.

24 Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir.

25 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th

26 Cir. 1998).

27 ///

28 ///

7

1      In opposition, Plaintiff initially argues Defendants' motion for summary judgment should be

2  denied because "Defense never answered the interrogatories … dated January 12, 2020, which prejudiced

3  Plaintiff & will result in an incomplete record."  (Pl.'s Opp'n at 3, ECF No. 85.)

4      Rule 56(d) of the Federal Rules of Civil Procedure provides a procedure by which a party may

5  avoid summary judgment when such party has not had sufficient opportunity to discover affirmative

6  evidence necessary to oppose the motion. See Garrett v. San Francisco, 818 F.2d 1515, 1518 (9th Cir.

7  1987).  In particular, Rule 56(d) provides that a court may deny a summary judgment motion and

8  permit the opposing party to conduct discovery where it appears that the opposing party, in the

9  absence of such discovery, is unable to present facts essential to opposing the motion. Fed. R. Civ. P.

10 56(d).  A pending discovery motion is sufficient to raise a question as to whether the party opposing

11 summary judgment should be permitted additional discovery, even if no request under Rule 56(d) has

12 been made. See Garrett, 818 F.2d at 1518.

13      Plaintiff fails to provide any explanation why Defendants Hernandez and Williams's

14 interrogatory responses are necessary to adequately oppose the motion for summary judgment.  (See

15 ECF No. 85.)  Further, Defendants Hernandez and Williams did not respond to Plaintiff's

16 interrogatories because they were untimely and served over two months after the discovery deadline

17 expired.  (ECF No. 66 at 4.)  Indeed, on March 26, 2020, the Court previously denied Plaintiff's

18 motion to compel Defendants Hernandez and Williams to respond to Plaintiff's untimely

19 interrogatories.  (Id.)  As stated in the Court's March 26, 2020 order, Plaintiff has failed to explain

20 why he could not have submitted the interrogatories within the discovery deadline and he never

21 requested an extension of time to do so.  (Id.)  Accordingly, there is no basis to Plaintiff's claim that

22 Defendants' motion for summary judgment based on the untimely and improper interrogatories.

23      Plaintiff further argues that Defendant Hernandez ordered him to submit to a strip search by

24 removing his boxers, squatting, bending, coughing and spreading his buttocks without any regard for

25 Plaintiff's medical condition.  Plaintiff contends that he provided Defendant Hernandez with a

26 permanent accommodation chrono issued by the chief medical officer which provided no bending, no

27 back handcuffs or lifting over ten pounds.  Plaintiff was then subjected to contraband security watch

28

8

1    for three days and nights in which Defendants Williams and Hernandez were "complicit."  Plaintiff

2    contends Defendants "M. Hernandez and E. Williams are both complicit to the acts and wrongdoing,

3    abusing their authority, gross negligence for not abiding b policies and procedures which led to the

4    cruel & unusual punishment of the Plaintiff.  For it could have not been possible if either Defendant

5    would have performed their duties by the Department Operations Manual."  (Pl.'s Opp'n at 5, ECF

6    No. 85.)  Plaintiff essentially argues that because Defendants Hernandez and Williams disregarded his

7    medical chrono by ordering him to submit to an unclothed body search which lead to his placement in

8    the contraband security watch, they were complicit in the conditions he experienced therein.

9           As an initial matter, there is no evidence Defendants Hernandez and Williams were personally

10   involved in determining or making the decision whether to place Plaintiff on contraband security

11   watch.  Even viewing all reasonable inferences in a light favorable to Plaintiff, Defendants have

12   submitted evidence showing they had no material involvement in the decision to place Plaintiff on

13   contraband security watch, and Plaintiff has offered nothing to rebut that.  Rather, it is undisputed that

14   only a Captain or Administrative Officer of the Day (AOD) could authorize Plaintiff's placement on

15   contraband surveillance watch, and that the AOD made the decision in this instance to place Plaintiff

16   on contraband surveillance watch.  (Williams Decl. ¶ 11.)  Plaintiff contends that Defendant

17   Hernandez conducted the search which eventually led to his placement on contraband surveillance

18   watch, and acknowledges that Hernandez's involvement ended after he escorted Plaintiff to the

19   holding cell at the Facility C medical center.  (ECF No. 12 at 6, 10; Pl's Dep. 64:4-25; Hernandez

20   Decl. ¶¶ 3-4.)  In addition, Plaintiff  contends Defendant Williams' involvement ended after Plaintiff

21   was escorted from the Facility C medical center to the Short Term Restricted Housing Unit where the

22   contraband surveillance watch was conducted.  (Pl.'s Opp'n at 10-11; Pl.'s Dep. 38:19-25, 48:12-25,

23   49:1-4, 50:6-25, 51:1-25, 60:6-25, 61:1-19, ECF No. 12 at 10-11; Williams Decl. ¶¶ 5-6, 11-12.)

24          Furthermore, there is no evidence to show that Defendants Hernandez and Williams were

25   responsible for or aware of the conditions Plaintiff experienced while on contraband surveillance

26   watch.  It is undisputed that Defendants Hernandez and Williams were not part of the Short Term

27   Restrict Housing Unit team where Plaintiff's contraband surveillance watch was conducted, and they

28   were not assigned to visually monitor Plaintiff during his contraband surveillance watch.  (Hernandez

9

1    Decl. ¶¶ 3-4; ECF No. 12 at 10; Williams Decl. ¶ 2; Pl.'s Dep. 57:21-25, 58:1-6, 61:20-25, 62:1-25;

2    62:1-10.)  Plaintiff's contention that Defendants involvement in the attempted search led them to be

3    "complicit" in the contraband surveillance watch conditions is insufficient to demonstrate an Eighth

4    Amendment claim for deliberate indifference.  It is beyond dispute that California's contraband

5    surveillance watch procedures are not unconstitutional per se, <u>Chappell v. Mandeville</u>, 706 F.3d 1052,

6    1057-62 (9th Cir. 2013), "just putting plaintiff on  (whether it be making the decision or physically

7    escorting plaintiff to the  unit) does not establish a plausible claim for a constitutional violation,"

8    <u>Fletcher v. Swarthout</u>, No. 2:14-cv-0567 DB P, 2016 WL 6135870, * 5 (E.D. Cal. Oct. 21, 2016)

9    (granting motion to dismiss Eighth Amendment claim with regard to placement and retention on ).

10   Therefore, based on the lack of evidence demonstrating that Defendants "were present, partook in, or

11   at least observed plaintiff during his stay in ," Plaintiff has not established the subjective element of an

12   Eighth Amendment violation.  <u>Fletcher</u>, 2016 WL 6135870, at *5; <u>see also</u> <u>Glaze v. Stane</u>, No. 1:14-

13   cv-01153-DAD-SAB (PC), 2016 WL 7014407, *5 (E.D. Cal. Dec. 1, 2016) (granting summary

14   judgment for defendant based on undisputed facts that defendant's superior made the decision to place

15   the plaintiff on contraband surveillance watch, defendant was not responsible for supervising

16   conditions, and defendant was not aware of the conditions within the contraband watch).

17          Plaintiff further argues that Defendants could and should have had him x-rayed for contraband

18   or ceased the search after he passed the metal detector tests.  (ECF No. 85 at 3-4, 6, 10-14, 22-24.)

19   However, it is undisputed that the prison's contraband surveillance watch procedures requires inmates

20   who are ordered to submit to an unclothed body search to "completely disrobe" so that staff can

21   "inspect and search each item of clothing and visually inspect the inmate's body."  (CDCR DOM §

22   52050.16.5, Williams Decl. Ex. A.)  It is also undisputed that Plaintiff was ordered to submit to an

23   unclothed body search as part of a systematic search for contraband, and Plaintiff refused to remove

24   all of his clothing as ordered.  (ECF No. 85 at 22-24; Williams Decl. ¶¶ 3-8; Pl.'s Dep. 38:10-25, 39:5-

25   21, 48:12-25, 49:1-25, 50:1-25, 52:1-25, 55:24-25, 60:6-25, 61:1-19; ECF No. 12 at 4, 6, 10.)  It is

26   further undisputed that the fact Plaintiff passed a metal detector test did not eliminate the possibility he

27   was hiding contraband within his body, and there was no ability to conduct an examination by x-ray.

28   Williams Decl. ¶ 9; Pl.'s Dep. 53:10-25, 54:1-25, 58:7-11, ECF No. 12 at 11; CDCR DOM 00A7

52050.21, Williams Decl. Ex. A; Feinberg Decl. ¶ 22.)  Further, Plaintiff's medical records demonstrate that he was physically examined by medical staff while on contraband surveillance watch, and it was concluded that no physical limitations prevent Plaintiff from complying with the officers' orders. (Feinberg Decl. ¶¶ 12-13, Ex. B.)  Plaintiff also does not dispute that medical staff offered to assist him in removing his underwear for the unclothed body search, that he refused the offer without explanation, and that he could not explain why he could not remove his underwear when he was able to remove his pants without complaint or injury.  (Williams Decl. ¶¶ 4-8.)  In addition, Plaintiff's medical records demonstrate that did not suffer any injuries as a result of the contraband surveillance watch conditions.  (Feinberg Decl. ¶ 21.)

Moreover, even if Plaintiff could demonstrate that Defendants Hernandez and/or Williams had some involvement in recommending or placing him on contraband surveillance watch, it is undisputed that Plaintiff did not have a valid chrono prohibiting bending, squatting, lifting, etc. in February 2017. Although Plaintiff attaches a permanent chrono dated August 10, 2010, it specifically states that "chronos indicating permanent injunction shall be reviewed *annually*."  (citation, emphasis added.)  There is simply no evidence that Plaintiff had an active/current chrono preventing him from complying with Defendants request to bend/squat and cough in order to conduct the visible cavity search in February 2017.  In fact, Plaintiff's medical records reveal that in June 2017, Plaintiff requested to reinstate the 2010 chrono, but it was  determined that Plaintiff did not medically qualify for any restrictions against bending and squatting. (ECF No. 85 at 52; see also Feinberg Decl. ¶ 19, Ex. B.)

Plaintiff repeatedly argues that Defendants violated several policies set forth in the Department Operations Manual.  However, the violation of prison policy does not in and of itself state a claim under Section 1983, which requires a showing of the violation of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988) (providing that Section 1983 requires showing of violation of federal law). There is no authority cited or of which the Court is aware suggesting that the Eighth Amendment or other federal law requires an inmate's scan to be assessed by a doctor or that the amount of training Defendants received on operating the scanner was insufficient.  Accordingly, Defendants Hernandez and Williams are entitled to summary judgment.

///

11

1          2.      Qualified Immunity

2          Even if Plaintiff demonstrated that Defendants violated Plaintiff's constitutional rights, the

3   Court finds Defendants are entitled to qualified immunity.

4          "Qualified immunity shields public officials from civil damages for performance of discretionary

5   functions.  It is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute

6   immunity, it is effectively lost if a case is erroneously permitted to go to trial.'"  Mueller v. Auker, 576

7   F.3d 979, 992 (9th Cir. 2009) (italics in original and citation omitted).  "Qualified immunity shields a[

8   correctional] officer [or medical staff member] from suit when [they] make[] a decision that, even if

9   constitutionally deficient, reasonably misapprehends the law governing the circumstances [they]

10  confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "The purpose of this doctrine is to

11  recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability

12  to make difficult decisions in challenging situations, thus disrupting the effective performance of their

13  public duties."  Mueller, 576 F.3d at 993.

14         "In resolving questions of qualified immunity at summary judgment, courts engage in a two-

15  pronged inquiry.  The first asks whether the facts, '[t]aken in the light most favorable to the party

16  asserting the injury, … show the officer's conduct violated a [federal] right[.]'"  Tolan v. Cotton, 572

17  U.S. 650, 655-56 (2014) (citation omitted).  "The second prong of the qualified-immunity analysis asks

18  whether the right in question was 'clearly established' at the time of the violation."  Id. at 656 (citation

19  omitted).  In applying the qualified immunity doctrine, courts may "exercise their sound discretion in

20  deciding which of the two prongs of the qualified immunity analysis should be addressed first in light

21  of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

22         Under the second prong of the qualified immunity analysis, the question is whether the right in

23  question was clearly established at the time of the violation.  Tolan, 572 U.S. at 656.  A right is "clearly

24  established" when "the contours of the right [are] sufficiently clear that a reasonable official would

25  understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

26  Clearly established law should not be defined "at a high level of generality"; rather, it "must be

27  particularized to the facts of the case."  White v. Pauly, ____ U.S. ____, 137 S. Ct. 548, 552 (2017) (*per

28  curiam*) (citation omitted).  While this standard does not require "a case directly on point," Ashcroft v.

12

1    al-Kidd, 563 U.S. 731, 741 (2011), courts typically should identify analogous cases, i.e., ones in which

2    prison officials "acting under similar circumstances" violated the Eighth Amendment, White, 137 S. Ct.

3    at 552.  To be analogous, however, the case need not be "materially similar."  Hope v. Pelzer, 536 U.S.

4    730, 739 (2002).

5         In the Ninth Circuit, to assess whether a right is clearly established, courts first look to "Supreme

6    Court and Ninth Circuit law existing at the time of the alleged act."  Cmty. House, Inc. v. City of Boise,

7    623 F.3d 945, 967 (9th Cir. 2010) (citation omitted).  Absent binding precedent, courts should consider

8    all relevant decisional law.  Capoeman v. Reed, 754 F.2d 1512, 1514 (9th Cir. 1985).  Unpublished

9    circuit and district court decisions inform the analysis.  Bahrampour v. Lampert, 356 F.3d 969, 977 (9th

10   Cir. 2004); Krug v. Lutz, 329 F.3d 692, 699 (9th Cir. 2003).

11        In Chappell, the Ninth Circuit reviewed California's contraband surveillance watch procedures

12   as of 2002.  The Court held that conditions in the contraband surveillance watch for six days, such as

13   continuous lighting, no mattress, tapping of clothing, lack of ventilation in hot cell, chaining to an iron

14   bed, shackles at ankles and waist, and having to eat like a dog, did not foreclose the finding of

15   qualified immunity.  Chappell, 706 F.3d at 1057-62.  To date, the Ninth Circuit has not determined

16   ruled whether placement on contraband surveillance watch is unconstitutional. See, e.g., Hinkley v.

17   Vail, 616 Fed. Appx. 274, 274 (9th Cir. 2015) (defendants entitled to qualified immunity because it

18   would not have been clear to reasonable official that 84-hour placement on  violated Eighth

19   Amendment); Centano v. Wilson, 479 Fed. Appx. 101 (9th Cir. 2012) (finding no genuine dispute of

20   fact as to whether conditions on  violated Eighth Amendment).  Thus, because the Ninth Circuit has

21   held that California's contraband surveillance watch procedures are not unconstitutional per se, the

22   mere placement on contraband surveillance watch is not a constitutional violation.

23        Here, the allegations within the contraband surveillance watch experienced by Plaintiff are less

24   egregious than those present in Chappell.  Although Plaintiff faced similar circumstances, including

25   being handcuffed, placed in leg irons and constant bright lights, there are no allegations that Plaintiff

26   was without a mattress, that his clothing was tapped, that there was a lack of ventilation in a hot cell,

27   that he was chained to an iron bed, or that he was forced to eat like a dog.  In addition, Plaintiff was

28   subjected to the conditions only half the time from that in Chappell.  Even considering these more

13

1    severe circumstances in <u>Chappell</u>, the Ninth Circuit found that reasonable prison officials would not

2    have known the conditions were unconstitutional, which entitled them to qualified immunity.  Further,

3    Plaintiff's medical records demonstrate that Plaintiff did not complain of any injuries during the

4    contraband surveillance watch, and did not suffer any injuries as a result of the contraband

5    surveillance watch.  (Feinberg Decl. ¶¶ 12-13, 15, 20-21.)  Plaintiff has offered no authority to

6    demonstrate that the conditions he allegedly experienced were unconstitutional per se, and the

7    authority cited herein demonstrates otherwise.  <u>See</u> <u>Maraziti v. First Interstate Bank</u>, 953 F.2d 520,

8    523 (9th Cir. 1992).   Thus, the conditions within Plaintiff's contraband surveillance watch were not

9    "such a far cry from what any reasonable prison official could have believed was legal that the

10   defendants knew or should have known they were breaking the law."  <u>Chappell</u>, 706 F.3d at 1062

11   (citation and quotation marks omitted).

12          In addition, given the Ninth Circuit authority that placement of an inmate on contraband

13   surveillance watch is not unconstitutional per se, a reasonable officer in Defendants' positions would

14   not have had fair notice that their actions were unlawful.   Because Defendants Hernandez and

15   Williams did not work in the housing unit where the contraband surveillance watch was conducted and

16   were not present during Plaintiff's stay, reasonable officers in Defendants' positions would presume

17   that their supervisors' decision to place Plaintiff on contraband surveillance watch was lawful.

18   Further, reasonable officers in Defendants' positions would not have had fair notice that their actions

19   may lead to Plaintiff being placed on contraband surveillance watch under alleged unconstitutional

20   conditions.  Accordingly, Defendants Hernandez and Williams are entitled to qualified immunity in

21   this instance.

22                                            **IV.**

23                                   **RECOMMENDATIONS**

24          Based on the foregoing, it is HEREBY RECOMMENDED that:

25          1.      Defendants' motion for summary judgment be granted in its entirety; and

26          2.      Judgment be entered in favor of Defendants.

27   ///

28   ///

                                                14

1      These Findings and Recommendations will be submitted to the United States District Judge

2 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after

3 being served with these Findings and Recommendations, the parties may file written objections with

4 the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

5 Recommendations."  The parties are advised that failure to file objections within the specified time

6 may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir.

7 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

8

9 IT IS SO ORDERED.

10 Dated:   **July 31, 2020**

11                                UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28